UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 1:19-cv-00149-FDW-DSC

| | |
|---|---|
| KATRINA BECKER, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>ANDREW M. SAUL, Commissioner of )<br>Social Security Administration )<br>)<br>    Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff Katrina Becker's Motion for Summary Judgment (Doc. No. 7), filed November 4, 2019, and Defendant Acting Commissioner of Social Security Andrew Saul's ("Commissioner") Motion for Summary Judgment (Doc. No. 9), filed January 16, 2020. Both parties have filed Memoranda in support of their respective Motions (Docs. Nos. 7-1, 10) and Plaintiff filed a Response on January 30, 2020. (Doc. No. 11). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

I. BACKGROUND

1

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on April 12, 2012, alleging disability beginning June 30, 2007. (Tr. 20). After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. After hearing held on May 13, 2014, Jerry W. Peace, the ALJ, issued an unfavorable decision. (Tr. 17, 28). Plaintiff's subsequent request for review by the Appeals Council was denied on January 13, 2016, then becoming the final decision of the Commissioner. (Tr. 1, 15).

On March 4, 2016, Plaintiff appealed the Commissioner's final decision, filing a Complaint with this Court. (Tr. 814–817); Becker v. Colvin, No. 1:16-CV-00047-FDW, 2017 WL 1179154, at *1 (W.D.N.C. Mar. 28, 2017). In an Order dated March 28, 2017, this Court remanded the case with instructions that the ALJ evaluate the opinion evidence of a treating psychiatrist not considered in the previous decision. Becker, 2017 WL 1179154 at *3. The Appeals Council then issued an Order for remand of the case in accordance with the instructions of the Court. (Tr. 829–32). Upon remand, ALJ Jerry W. Peace held a video hearing on December 14, 2018, to consider Plaintiff's claims *de novo*. (Tr. 686–97).

In a decision dated February 5, 2019, the ALJ first found Plaintiff had met the insured status requirements through June 30, 2010. (Tr. 686, 688). The ALJ then found Plaintiff had not engaged in substantial gainful activity during the period of her alleged onset date of June 7, 2007 through her date last insured ("DLI") of June 30, 2010. (Tr. 688)/

The ALJ found Plaintiff to have the following severe impairments: "cervical and lumbar degenerative disc disease, depression, anxiety, and post-traumatic stress disorder (20 C.F.R. 404.1520(c))." Id. The ALJ determined Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1. (Tr. 688–87). The ALJ then found that, through the DLI, Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b):

> [E]xcept never climb ladders, ropes, or scaffolds: occasionally climb ramps or stairs: frequently balance: occasional stoop, crouch, or kneel, but never crawl: work is limited to simple, routine, and repetitive tasks: performed in a work environment free of fast-paced production requirements: involving only simple, work-related decisions: and with few, if any, work place changes: capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting: the individual can perform simple tasks for two hour blocks of time with normal rest breaks during an eight hour work day, with no interaction with the public and only occasional interaction with coworkers.

(Tr. 690). In accordance with the testimony of the vocational expert ("VE"), the ALJ found Plaintiff was unable to perform any of her past relevant work as a bartender, receptionist, or security guard. (Tr. 696). In response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the vocational expert ("VE") testified that while Plaintiff could not perform her past relevant work, other jobs existed in the national economy Plaintiff could still perform despite her impairments. (Tr. 697). Based upon the above factors identified by the ALJ, the VE found Plaintiff "would have been able to perform the requirements of representative occupations such as light, SVP 2 jobs such as Shipping and Receiving Checker, DOT #222.387-074, 70,000 jobs nationally; Mail Clert, DOT #209.687-026, 99,000 jobs nationally; and Checker-I, DOT #222.687-010, 70,000 jobs nationally." Id. In observation of SSR 00-4p, the ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). Id. Upon consideration of the entire record, the ALJ

concluded Plaintiff was not disabled, as defined under the Social Security Act, from June 30, 2007 through the DLI, June 30, 2020.  Id.

Plaintiff has exhausted all administrative remedies, and thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now appeals pursuant to 42 U.S.C. § 405(g), arguing that the ALJ failed to properly evaluate the opinion evidence.  (Doc. No. 7-1 at 4).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).  A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted).  "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted).  We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here

4

conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996

5

WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

"At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

The only inquiry on appeal is whether the ALJ properly evaluated the opinion evidence of Victoria DeFilippo, M.D. (Doc. No. 7-1 at 4). Plaintiff contends the ALJ erred in affording limited

weight to the Medical Source Statement provided by Dr. DeFilippo on July 17, 2012. Id. at 4–6. Specially, Plaintiff argues the ALJ's findings were unreasonable with respect to the opinion evidence because although the Medical Source Statement was completed two years after the DLI, it was based on the same symptoms Plaintiff suffered during the relevant period. Id. at 6. Further, Plaintiff contends that, contrary to the conclusion of the ALJ, Dr. DeFilippo's opinion was supported by her treatment notes and by the record as a whole. Id. at 6, 9. Finally, Plaintiff argues the ALJ "failed to 'build an accurate and logical bridge from the evidence to his conclusion." Id. at 10 (citing Monroe, 826 F.3d at 189 (4th Cir. 2016)).

In determining whether a claimant is disabled, the ALJ must consider all medical opinions in the record in addition to all other evidence they receive. 20 C.F.R. § 404.1527(b). Pursuant to federal regulation, the ALJ is to, "evaluate every medical opinion [they] receive" regardless of its source. 20 C.F.R. § 404.1527(c). When the ALJ does not afford a treating physician's opinion controlling weight, they consider a number of factors in determining the amount of weight they give to any medical opinion. Id. The factors considered by the ALJ include: (1) examining relationship; (2) treatment relationship, including the length of the treatment relationship and frequency of evaluation, as well as the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. Id. However, the ALJ is not required to give special consideration to any medical source opinion with respect to a whether or not the claimant is disabled, their residual functional capacity, the application of vocational factors, or to whether their impairment meets or equals the requirements of any impairments in the Listing of Impairments. 20 C.F.R. § 404.1527(d). These determinations are reserved to the Commissioner "because they are administrative findings that are dispositive of a case, i.e., that

7

would direct the determination or decision of disability." Id. Under Fourth Circuit precedent, a treating physician's opinion need not be given controlling weight where "the physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence." Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

Here, the Medical Source Statement of Dr. DeFilippo was rendered two years after the DLI of June 30, 2010, as it was dated July 17, 2012. (Tr. 585). The document consists of a standard form evaluation, in which the physician lists Plaintiff's diagnoses and symptoms and marks boxes in response to questions listed. (Tr. 584–85). The form demonstrates Plaintiff suffered from Major Depressive Disorder, Post Traumatic Stress Disorder, Panic Disorder, Melanoma, Hyperlipidemia, and Barrel's Esophagus. (Tr. 584). Dr. DeFilippo also marked the boxes for the symptoms suffered by Plaintiff, including anxiety attacks, disturbed mood, decreased energy, impaired focus/concentration, sleep disturbance, and isolation/emotional withdrawal. Id. Dr. DeFilippo marked "yes" in response to the question, "[i]f your patient tried working full-time (40hrs/wk), would she likely decompensate and her GAF thereby drop to 50 or lower?". Id. Dr. DeFilippo also noted Plaintiff was compliant with treatment, and rated her ability to do certain work-related activities. Id. The physician found Plaintiff had a marked limitation getting along with the general public, with co-workers, and with supervisors, and in performing at a consistent pace, responding to changes in routine, and dealing with normal work stress. Id. In maintaining concentration and focus, Dr. DeFilippo found Plaintiff had a moderate limitation, and concerning Plaintiff's ability to carry out short and simple instructions, the physician found she had a mild impairment. Id.

The form also posed two hypotheticals to which the physician was to check one of the boxes listed. (Tr. 585). The first of these questions stated, "[i]magine your plaintiff were

8

unemployed. If so, please estimate how often she would need to take unscheduled breaks for at least 15 minutes . . . ." to which Dr. DeFilippo marked the box stating "more than four times." Id. The other question stated, "[i]magine your patient were employed. If so, please estimate how often she would be absent from work due to her mental health problems," to which Dr. DeFilippo checked the box stating "more than four days a month." Id. Finally, the form asked whether Plaintiff's mental health problems and limitations had been present for over 12 months, to which Dr. DeFilippo responded in the affirmative. Id.

In analyzing the medical source opinions available, the ALJ made the following conclusion concerning the opinion of Dr. DeFilippo:

> I have given limited weight to this opinion even though Dr. Filippo is a treating provider, because her conclusions as to claimant's mental functioning are not relative to the period in question, her treatment notes do not support the degree of limitation assessed, and her conclusions are inconsistent with medical evidence of record prior to the date last insured (Ex 9F) and claimant's activities of daily living, prior to the date last insured. Moreover, treatment records of Dr. Filippo dated July 17, 2012 do not support the degree of limitation assessed as it is noted that claimant is stable on medications, describes experiencing panic attack only about once a week, and although claimant reports 'social situations are awkward and uncomfortable' and 'mood is down,' she presents as conversant and calm, good eye contact, thoughts organized and goal directed and speech relevant with normal rate and tone (Ex 3F/35).

(Tr. 695). The records relied on by the ALJ provide substantial support for the ALJ's determination. See generally Keffer v. Colvin, 519 F. App'x 151 (4th Cir. 2013) (affirming Commissioner's decision upon review of record showing substantial evidence supported the ALJ's RFC determination). Upon review, this Court cannot re-weigh conflicting evidence or make credibility determinations, Hays, 907 F.2d at 1456, and instead only considers whether "such

9

relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists, Johnson, 434 F.3d at 653 (citations omitted).

Under the "treating physician rule," an ALJ generally must give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . ." 20 C.F.R. 404.1527(c). However, "the rule recognizes that the nature and extent of each treatment relationship may temper the weight an ALJ affords it, as may the supportability of the opinion and the specialization of the treating source." Emrich v. Colvin, 90 F.Supp.3d 480, 490 (M.D.N.C. 2015). "Where, as here, a treating source's opinion is not given controlling weight, the ALJ must consider the factors set out in § 404.1527(c) in determining what weight, if any, to assign that opinion." Id.

Here, the ALJ noted that Dr. DeFilippo's opinion did not relate to the relevant period. (Tr. 695). While, "post-DLI medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre–DLI condition," it does not appear that there was an attempt by Dr. DeFilippo to link her findings to the relevant period. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 341 (4th Cir. 2012). Although she noted Plaintiff's impairments had been present for 12 months or more, that would only refer back to 2011, which is still one year beyond the DLI. (Doc. No. 10 at 7–8). Dr. DeFilippo provides no explanation in her opinion as to what information she based her opinion on or how she came to these conclusions. Id. at 6.

Further, the ALJ found Dr. DeFilippo's findings were not supported by the medical evidence of record prior to the DLI and were inconsistent with Plaintiff's activities of daily living

10

prior to the DLI. (Tr. 695). Upon examination of the record, the Court is not persuaded the ALJ's decision is unsupported by substantial evidence. Indeed, the ALJ noted the record was full of references to Plaintiff's extensive social activities during the relevant period. For example, he noted Plaintiff was active in her garden in June 2008 and traveled twice to visit family in July and September of that year. (Tr. 694). Further, he noted that in 2009, she had taken a road trip that lasted several weeks to visit family and friends throughout various states. Id. The ALJ also acknowledged that Plaintiff visited friends in February 2009, participated in "druid training" in March 2009, and continuously engaged in such activities with friends throughout the relevant period. Id.

Looking to the medical evidence of record, Psychiatrist Brian K. Bain evaluated Plaintiff in January of 2010, and found Plaintiff had frequent panic attacks that lasted up to one hour. (R. 364). However, the physician noted these occurred primarily in public places like Walmart, which the ALJ took into account in limiting Plaintiff's RFC to no public interaction. (Tr. 364, 690). The ALJ gave considerable weight to Dr. Robin Pedowitz, as she evaluated the claimant in 2009, during the relevant period, and gave detailed explanations to support her conclusion that Plaintiff "retains residual capacities to do at least simple work tasks in a loosely supervised environment within her physical limitations." (Tr. 391, 694). Dr. Pedowitz's opinion was quite detailed, containing six pages worth of notes referencing Plaintiff's physical and mental conditions and capabilities. (Tr. 385—91). The ALJ found that Dr. Pedowitz' testimony was "consistent with the longitudinal record" as she also referenced Plaintiff's travels to visit friends and family, "doing crafts, [and] attending week long enactments. . . ." (Tr. 694).

11

Case 1:19-cv-00149-FDW   Document 12   Filed 06/10/20   Page 11 of 12

The Court has reviewed the record, and based upon the evidence before it, the Court finds the ALJ's weighing of the opinion evidence is consistent with applicable law and is supported by substantial evidence in the record. Accordingly, Plaintiff has presented no basis for reversal or remand of the ALJ's determination.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 9) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: June 10, 2020

Frank D. Whitney
United States District Judge